## Gilson *against* Stewart.

An action of *assumpsit* will not lie upon an express promise to pay a debt secured by specialty, or other security of a higher nature, although an account be settled between the parties, and a balance struck.   But if other matters of account between the parties be blended with the settlement of that which arose out of the specialty, an action of *assumpsit* will lie upon an express promise to pay the balance due.

ERROR to the common pleas of *Berks* county.

John L. Stewart and James Wherry, against Riah Gilson and Christopher Medlar, trading in the name of Gilson & Co. This was an action of *assumpsit* for work and labour.

The plaintiff, to maintain the issue on his part, gave the following evidence :

Jacob Miller sworn.   Riah Gilson and Christopher Medlar composed the firm of Gilson & Co.   They were contractors on the Chesapeake and Ohio canal.   Heard Gilson say that the plaintiffs had finished the coping of an aqueduct for them.   Both Gilson and Medlar told me they were partners.   Medlar was in partnership in another job.

Michael M'Dermott sworn.   I went with Stewart and Gilson a few days before the day on which they came to a settlement.   Stewart asked Gilson if he meant to pay them ; Gilson said they owed him the money, and that he would pay it as soon as the company would settle with him.   I was in and out at the time they did settle. Gilson said it was about 1800 dollars, according to the best of my knowledge.   The debt was for work done on the Chesapeake and Ohio canal, as both Stewart and Gilson said.   The plaintiffs are stone cutters.   I heard Stewart say he had written to get an approval of their work.

Mr Rhoads sworn.   In July 1836, I called with plaintiffs at Gilson's office.   I showed him this account; Gilson got out his papers, and looked over them and the account.   He said the account was correct and that this was the balance which was due the plaintiffs, and ought to have been paid them long ago.   He said this was the account stated between them, as made when they settled on the 28th or 31st of the month ; and I cannot say which of the two days. That it was right, and should have been paid long ago, and that he would pay it.   There was no arrangement made of any kind, at that time, in my presence.   I said he must give a negotiable note for the money.   He said he would pay it, and give a note, but not negotiable ; that there was too much of his paper already in market, or some-

[Gilson v. Stewart.]

thing to that effect. Mr Wells was there. The account was in Mr Wells's handwriting. Wells was his clerk.

The account was then given in evidence.

### *DR.*

Messrs Stewart & Wherry,

To Gilson & Co.

| | | |
|---|---|---|
| 1834, April 18, To cash, . . . . . . | 10 00 | |
| Do. of John Gilson, . . | 100 00 | |
| December 8, Do. . . . . . . | 20 00 | |
| | | $130 00 |
| 1835, May 28—31. Balance, . . . . . . . . . | | 1806 70 |
| | | $1936 70 |

### *CR.*

| | |
|---|---|
| 1835, April 28. By coping, . . . . . . . | $1850 00 |
| Trimming walls, . . . . . . | 25 00 |
| Boating 245 bushels cement, . . . | 14 70 |
| do. 300 do. sand, . . . . | 15 00 |
| Taking up three stones and replacing, | 12 00 |
| Pointing trunk, . . . . . . . | 15 00 |
| Expenses, . . . . . . . . . | 4 50 |
| Lawyer's fees, | |
| | $1936 70 |

The defendant's counsel offered in evidence an article of agreement dated the 30th of October 1833, between Stewart and Wherry of the one part, and Gilson & Co. of the other part (prout agreement). Its execution was admitted. This testimony was offered, to show that there was a written contract, under seal, between the parties, for doing the work for which this debt was claimed, and that the plaintiff's remedy was on this contract; and also to show by it that the plaintiffs were to procure a certificate that their work was finished, before the defendants were bound to pay.

The court rejected the evidence, because this action is brought to recover the balance of a large claim, which had been reduced by a number of payments; which claim the parties have settled, and stated an account between them, showing the balance that was due; and because it is proved by the clearest evidence, that Gilson, one of the defendants, had said that this sum was due, ought to have been paid long ago, and that he would pay it. To which decision of the court the defendant's counsel excepted.

Agreement above referred to in the bill of exceptions:

" Agreement made and concluded upon this 13th day of October, A. D. 1833, by and between John L. Stewart and James Wherry of the one part, and Gilson & Co. of the other part, all of

[Gilson v. Stewart]

Washington county, state of Maryland : witnesseth, that the party of the first part, for and in consideration hereinafter mentioned, covenant and agree to and with the party of the second part, to commence when required, and to quarry, dress, haul, set and to complete the coping required on aqueduct No. 4, on the Chesapeake and Ohio canal, in a workmanlike manner, and in accordance with the directions of the engineers, progressing, grouting and fastening the same, so as to meet with their approval of the work. They agree further, to be at every necessary expense, in completing the coping of said construction, finding of the materials, &c., with the exception only of the hereinafter named agreement. They also agree to give bills of sale on the work, when payments are made monthly or otherwise, and empower and authorise Riah Gilson, superintendent for Gilson & Co., in the event of a non compliance of this condition on the first party's part, to assume the entire direction of the work, and to complete it at the said first party's expense. In consideration of which agreement, truly and faithfully performed, Gilson & Co. covenant and agree to pay, or cause to be paid, unto the party of the first part, the full and just amount of 1850 dollars, on receiving certificate of approval of completion of coping, of canal company, and will pay on work dressed and estimated on, 40 cents per foot superfice, or more, if estimated higher by engineers ; said payments to be deducted from the amount to be paid for completing the whole coping. It is agreed that Gilson & Co. are to furnish shop, and the tools that will be requisite for conducting the work, if they can conveniently spare them, which are to be charged to the first party at a fair and moderate valuation, and at the completion of the job, to be disposed of as the mutual agreement of both parties may direct. Gilson & Co. agree to furnish all the cement and sand required, as convenient to the work as possible, and also the iron that may be required for clamping the coping. To prevent any misunderstanding, it is agreed by both parties that no transference of this contract shall be made by either party, without the sanction and approbation of the other. In witness whereof each party bind themselves one unto the other, firmly by these presents, in the penal sum of 300 dollars.

" Signed at Blackford Ferry House, on the day and year as herein written.

" JOHN L. STEWART,  [L. S.]
" JAMES WHERRY,    [L. S.]
" GILSON & Co.,      [L. S.]."

Error assigned. The rejection of the evidence offered in the bill of exceptions.

*Strong* and *Mallory*, for plaintiffs in error, cited, *Cowp.* 129 ; 19 *Johns. Rep.* 165 ; 10 *Serg. & Rawle* 321 ; 14 *Mass. Rep.* 99 ; 2 *Term Rep.* 483 ; 12 *Johns. Rep.* 227 ; 2 *Hen. Black.* 317 ; 1 *Lord Raym.* 122 ; 1 *Johns. Rep.* 35 ; 1 *Chitt. Pl.* 96.

[Gilson v. Stewart.]

*Deckert,* for defendant in error, cited, 7 *Cowen* 39 ; 3 *Kent's Comm.* 40.

The opinion of the Court was delivered by

KENNEDY, J.—It is laid down by Mr *Chitty* in the first volume of his *Treatise on Civil Pleading,* page 94, that where a party has a *security of higher nature,* he must found his action *thereon;* and as the law has prescribed different forms of action on different securities, *assumpsit* cannot in general be supported, when there has been an express contract under *seal* or of *record,* but the party must proceed in debt or covenant, when the contract is under seal, or in debt or *scire facias,* if it be of record, even though the debtor, after such contract were made, *expressly* promised to perform it ; for which he refers to a great number of authorities in the margin of the book, which go to establish the rule, as laid down by him, beyond all question ; and show likewise, that it has obtained ever since pleading in the common law was reduced to a system, or became, as it were, a matter of science.  And undoubtedly it is not without its use ; because it tends to promote certainty, and to prevent that confusion which would otherwise take place, and defeat, in some measure, the great object of keeping a registry of judicial proceedings, which is to furnish plenary evidence, at all times afterwards, of what it was that had been passed upon and determined.  There is also another rule equally well established in regard to the maintenance of the action of *assumpsit* : the promise must be founded upon a sufficient consideration, for without this, it will be regarded as a mere *nudum pactum,* upon which no action can be sustained.  Hence a promise, though express, by a specialty debtor to pay the debt to his creditor, will not support *assumpsit,* because the promise is made without consideration. *Anon. Cowp.* 128, 129. And even when made in consideration of a promise, on the part of the creditor, to give indulgence and to forbear payment to a subsequent day, the consideration, as I apprehend, must still be considered insufficient to support an action of *assumpsit.*  For though, generally, mutual promises form a good and sufficient consideration for the support of each other, yet it is conceived, that in the case mentioned it will not hold, because a promise, in order to make it a sufficient consideration for the support of the promise of the party in whose favour it is made, must be such a one as is binding and can be enforced: but a promise, by a bond or specialty creditor to forbear payment to a future day, made after the debt has become payable, has not been considered binding upon him, and therefore the promise of the debtor, in such case, cannot be regarded as binding upon him either: this principle has been settled repeatedly, even against a surety, who is said to be regarded with some favour by the law ; and held that he is not discharged by such promise of indulgence made by the creditor to his principal, because the promise is not binding upon the creditor, so as to prevent him from suing the principal debtor ; it being a *nudum pactum,* he may

[Gilson v. Stewart.]

sue him the next minute after making it, if he chooses. Reynolds *v.* Wood, 5 *Wend.* 501; Fallon *v.* Matthews, 15 *Johns. Rep.* 433; 12 *Johns.* 426; Planter's Bank *v.* Sallman, 2 *Gill & Johns.* 230; Arundel Bank *v.* Gable, *Chitt. on Bills* 298, *note; 4 Bing.* 717.

But where an express promise is made, founded upon a *new consideration,* to pay a debt or perform a contract *under seal,* it has been ruled that *assumpsit* will lie; as on a promise by the obligor to an assignee of a bond, in England, to pay him the amount thereof in consideration of forbearance. Reynolds *v.* Prosser, *Hardr.* 71; Oble *v.* Dittlesfield, 1 *Ventr.* 153; 1 *Roll. Abr.* 29, *pl.* 50; 1 *Saund. Rep.* 210, *n.* 1; 1 *Chitty on Civil Pl.* 96. There however a bond is not assignable at law, so as to enable the assignee to sustain an action upon it in his own name, and the courts would seem to have strained the rule on this subject, in order to give the assignee a right to sue in his own name. But here, where a bond, made assignable by our statute, is assigned, it may well be doubted, whether a promise to the assignee, by the obligor, in such case, would be considered sufficient to support an action of *assumpsit,* more than if it had been made to the obligee, he still retaining the bond. But even in England, the propriety of the decision made in Fenner *v.* Mears, 2 *Black. Rep.* 1269, where the assignee of a *respondentia* bond was permitted to recover in *indebitatus assumpsit* against the obligor, upon a collateral promise in writing indorsed by the latter on the bond, engaging to pay the amount thereof to any assignee of the obligee, has been questioned by Lord Kenyon, in Johnson *v.* Collins, 1 *East's Rep.* 104. In Foster *v.* Allenson, 2 *Term Rep.* 479, however, where articles of partnership, under seal, were entered into between the parties, containing a covenant to account annually, and make a final settlement at the end of the partnership; and on the dissolution of it they accounted, and struck a balance which was in favour of the plaintiff, including items not connected with the partnership, which the defendant promised to pay; and held by the court that *assumpsit* lay on such promise; and Justice Buller appeared to think that it might have been maintained, though the account had included no other items than those of the partnership. This would certainly have been going very far, and carrying the principle beyond any judicial determination, that I am aware of, in which the question was raised. It is true that in Danforth *v.* Scoharie, 12 *Johns. Rep.* 227, the plaintiff recovered in *assumpsit* a balance, struck on an account stated between him and the defendant, of moneys falling due and having become payable upon a contract made between them under seal: but then it appears from the opinion of the court, as delivered by Mr Justice Thompson, that the question, whether *assumpsit* could be supported on a promise to pay such balance, was not made by the counsel, and therefore, as it would seem, was not passed on by the court. But the circumstance of the account in Foster *v.* Allenson including items not covered or embraced by the articles of partnership, which consequently could not have been con-

[Gilson v. Stewart.]

sidered in an action of covenant brought thereon, appears to have been the main, if not the only ground, upon which the court founded their opinion in support of the action.　The additional items, not included within the scope of the articles of agreement, were considered as entering into the consideration of the promise, which, in this respect, was certainly new and different from that contained in the articles; and therefore brought the case within the principle of the exception to the general rule.

Now whether the items embraced in the account given in evidence, in the case presented here for our consideration, were all such as are included in and provided for by the terms of the articles of agreement offered in evidence and rejected by the court, was a question of fact, which, it might be, after all the evidence was given, could only have been determined by the jury; but it is clear that the jury could not decide upon it, without having the articles of agreement before them, we therefore think the court erred in not permitting the articles of agreement to be read in evidence to the jury.　The court seem to have thought that if the parties stated the account given in evidence, and the defendants below promised to pay the balance struck thereon, the mere act of the parties accounting together, formed a sufficient consideration in law, so as to take the claim of the plaintiffs there out of the operation of the articles of agreement, and to enable them to support *assumpsit* for it, whether the account included items not provided for by the articles of agreement or not.　This, however, it will be perceived, from what has been shown above, can not be deemed correct; for there must be, at least, some additional consideration, such as items, for instance, foreign to the articles of agreement, introduced into the account and included within the promise, in order to take the claim founded upon it, out of the operation of the agreement or contract under seal; otherwise the plaintiffs below must be confined to their action of covenant founded upon the articles of agreement, for the recovery of their claim.

Judgment reversed, and a *venire de novo* awarded.